Little Rock Towel & Linen Supply Company v. Commissioner.
Little Rock Towel & Linen Supply Co. v. Commissioner
Docket No. 24230.
United States Tax Court
1952 Tax Ct. Memo LEXIS 351; 11 T.C.M. (CCH) 36; T.C.M. (RIA) 52010; January 18, 1952
*351 Petitioner is a corporation engaged in furnishing clean towels and linens to business establishments. During the war years, it was unable to replace any of its delivery equipment and in 1946 placed orders for six new trucks, estimated to cost about $8,100. Petitioner paid no dividends during 1946, retaining its earnings to finance such purchase. None were obtained until 1948, due to post-war conditions. Held, during the taxable year, petitioner's earnings and profits were not permitted to accumulate beyond the reasonable needs of the business, and petitioner was not availed of for the purpose of preventing the imposition of surtax upon its stockholders. E. C. Eichenbaum, Esq., Bolye Bldg., Little Rock, Ark., for the petitioner. John W. Alexander, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax for the year 1946 in the amount of $2,948.12. The sole issue is whether petitioner was availed of during the taxable year for the purpose of preventing the imposition of surtax upon its stockholders so as to subject petitioner to the surtax provided for by section 102 of the Internal Revenue Code. Findings of Fact Petitioner, *352 an Arkansas corporation with its principal place of business in Little Rock, Arkansas, is engaged in furnishing clean towels and linens to business houses. Its income tax return for the year in question was filed with the collector of internal revenue at Little Rock, Arkansas. Prior to December, 1941, Lasker's Imperial Laundry & Cleaners, Inc., (hereinafter referred to as Lasker's) carried on a laundry, dry cleaning, and linen-supply business. Its offices were located in buildings owned and leased from Minnie F. Lasker (hereinafter referred to as Minnie), the principal and almost sole stockholder. The Towel and Linen Department was located in a separate building from the one housing the laundry and consisted of about 10 or 12 employees who were truck drivers and clerical help. Myron B. Lasker, Jr., (hereinafter referred to as Myron) the only son of Minnie, was general manager of the corporation. On or about December 31, 1941, petitioner was incorporated with a capitalization of 300 shares of $1 par stock. Minnie owned all of the stock but two qualifying shares. On or about January 1, 1942, Lasker's transferred the following assets related to its Towel and Linen Department to petitioner: *353 Cash
$ 781.43
Accounts Receivable
2,511.25
Linen Supplies
14,452.64
Prepaid Expenses
55.30
Miscellaneous Cabinets
3,033.97
Furniture & Fixtures
748.04
Delivery Equipment
4,694.02
$26,276.65
Less: Reserve for Depreciation
$ 3,348.81
Accrued Taxes - Other than income
254.78
3,603.59
Total
$22,673.06 In return for these assets, Lasker's received $300 in cash and a note in the amount of $22,373.06. As of January 1, 1946, petitioner still owed $14,000 on the obligation, which was paid in the latter part of 1946. Petitioner paid no dividends for the years 1942 through 1946. Its gross receipts and net income before taxes for these years were as follows: Income
Year
Gross Receipts
Before Taxes
1942
$80,480.83
$12,836.33
1943
74,699.39
6,358.43
1944
77,848.44
10,454.90
1945
78,980.84
11,609.02
1946
83,855.23
13,792.76
Petitioner's financial statements from January 1, 1942, through December 28, 1946 were as follows: 1/1/42
12/31/42
12/31/43
12/30/44
ASSETS: Current Assets: Cash
$ 781.43
$ 6,937.74
$ 4,888.68
$11,094.64
U.S. Bonds
3,000.00
5,000.00
Accounts Receivable
2,511.25
3,138.97
2,144.53
2,126.68
Linen Supplies
14,452.64
17,314.21
16,423.76
16,963.39
TOTAL CURRENT ASSETS
$17,745.32
$27,390.92
$26,456.97
$35,184.71
Fixed Assets: Total Cost
$ 8,476.03
$ 8,413.83
$ 7,948.72
$ 7,730.72
Less: Reserve for Depreciation
3,348.81
4,437.91
5,256.84
6,231.84
NET FIXED ASSETS
$ 5,127.22
$ 3,975.92
$ 2,691.88
$ 1,498.88
Deferred Charges
$ 55.30
$ 172.16
$ 103.36
$ 194.99
TOTAL ASSETS
$22,927.84
$31,539.00
$29,252.21
$36,878.58
LIABILITIES: Current Liabilities: Notes Payable -
Imperial Laundry
$22,373.06
$15,723.06
$14,500.00
$14,000.00
Accrued Income Taxes
7,455.47
1,991.30
2,867.32
Accounts Payable and
Other Liabilities
254.78
2,598.76
2,639.05
2,157.32
TOTAL CURRENT LIABILITIES
$22,627.84
$25,777.29
$19,130.35
$19,024.64
Capital and Surplus: Capital Stock
$ 300.00
$ 300.00
$ 300.00
$ 300.00
Surplus
5,461.71
9,821.86
17,553.94
TOTAL CAPITAL & SURPLUS
$ 300.00
$ 5,761.71
$10,121.86
$17,853.94
TOTAL LIABILITIES
$22,927.84
$31,539.00
$29,252.21
$36,878.58
*354 12/29/45
12/28/46
ASSETS:
Current Assets:
Cash
$14,476.21
$ 7,872.76
U.S. Bonds
10,000.00
10,000.00
Accounts Receivable
2,060.47
2,342.90
Linen Supplies
18,464.39
22,175.51
TOTAL CURRENT ASSETS
$45,001.07
$42,391.17
Fixed Assets:
Total Cost
$ 7,642.65
$ 7,655.53
Less:
Reserve for Depreciation
6,558.45
6,600.32
NET FIXED ASSETS
$ 1,084.20
$ 1,055.21
Deferred Charges
$ 119.96
$ 46.44
TOTAL ASSETS
$46,205.23
43,492.82
LIABILITIES
Current Liabilities:
Notes Payable -
Imperial Laundry
$14,000.00
Accrued Income Taxes
3,201.99
$ 3,304.54
Accounts Payable and
Other Liabilities
2,574.71
3,039.33
TOTAL CURRENT LIABILITIES
$19,776.70
$ 6,343.87
Capital and Surplus: Capital Stock
$ 300.00
$ 300.00
Surplus
26,128.53
36,848.95
TOTAL CAPITAL & SURPLUS
$26,428.53
$37,148.95
TOTAL LIABILITIES
$46,205.23
$43,492.82
Its net income before taxes, net income after taxes, and dividends paid for the years 1947 through 1950 were as follows: Net Income
Net Income
Before
After
Dividends
Year
Taxes
Taxes
Paid
1947
$20,666.28
$15,999.71
$ 6,000.00
1948
19,199.87
14,881.92
6,000.00
1949
18,667.46
14,473.44
12,000.00
1950
19,166.63
14,758.31
12,000.00 Linen supplies listed in petitioner's financial statements as current assets were not assets available for sale, but were necessary for the performance *355 of petitioner's services. During the year 1947, petitioner declared stock dividends in the amount of $27,700 thereby increasing its capital stock to $30,000. At a meeting of the Board of Directors of petitioner on December 19, 1946, the following letter from Myron was read: "November 7, 1946 "Board of Directors Little Rock Towel & Linen Supply Company, Inc. Little Rock, Arkansas
"Dear Madam & Sir: "This letter will constitute my report to you as of September 28, 1946, together with certain recommendations for which I request your approval. "As of that date our statement of Assets and Liabilities reflected the following cash position: War Saving Stamp Fund
$ 50.00
Petty Cash
100.00
W. B. Worthen Co.
20,266.77
U.S. Bonds
10,000.00
$30,416.77
"Against this balance we have current liabilities of $20,571.69 of which $14,000.00 is a note payable to Lasker's Imperial Laundry & Cleaners, Inc. I recommend the immediate payment of this note, and this will leave us a cash position of $9,845.08, which I believe is sufficient operating capital to take care of our usual needs, but may not be adequate for the replacement of the delivery equipment of the company, which is fully depreciated. Six of our present *356 models are of the year 1940, and one is a 1938 model and all need replacing as soon as new pieces are available. A quotation has just been furnished by a local truck sales company and according to present day selling prices this replacement will entail an investment of $8,091.65. "I think that this expenditure can be made from future operating profits, but should a debit financing program be necessary in order to accomplish this replacement, your authority and cooperation is hereby requested. "I, therefore, request your approval of the matters discussed in this letter, and trust that you will act favorably on these request before December 31, 1946. "Respectfully submitted Sgd: Myron B. Lasker, Jr. Myron B. Lasker, Jr., Gen'l Manager" MBL:ce The minutes of this meeting were as follows: "MINUTES OF MEETING OF THE DIRECTORS OF THE LITTLE ROCK TOWEL & LINEN SUPPLY COMPANY, HELD IN LITTLE ROCK, ARKANSAS, DECEMBER 19, 1946 "A meeting of the Directors of the Little Rock Towel & Linen Supply Company was held in Little Rock, Arkansas, December 19, 1946, at which all of the Directors were present. "A report of the financial condition of the Company as of September 28, 1946, was submitted to *357 the Directors and also a letter dated November 7, 1946, from Mr. Myron B. Lasker, Jr., General Manager of the Company. Said letter is attached to and made a part of the Minutes of this meeting. "The financial condition of the Company and the recommendations made by Mr. Lasker were discussed. "After considering the financial condition of the Company, the Directors passed a resolution authorizing the officers of the Company to make immediate payment of the $14,000.00 note in favor of Lasker's Imperial Laundry & Cleaners. "The Officers of the Company were instructed to buy new delivery equipment as soon as the same is available, at a cost of not exceeding $8,100.00. "It was considered that the expenditures above authorized might leave the Company without adequate reserves but the Directors considered the purchase of the new equipment as absolutely necessary, and the payment of the note to be to the best interests of the Company, realizing, however, that it may be necessary for the Company to borrow some money until the cash position can be improved. "There being no further business to come before the meeting it was adjourned subject to the call of the President. "Sgd: Minnie F. Lasker *358 President "Sgd: M. M. Overton Secretary" Immediately after this Board meeting, petitioner placed orders for the trucks, and delivery would have been taken at once had they been available. Due to the difficulty in obtaining trucks, none were received until 1948, when about one truck every other month was obtained until the petitioner's needs were met. U.S. Government Bonds had been purchased in 1943, 1944, and 1945 in order that funds might be available after the war with which to replace the worn-out delivery equipment. At the end of 1946, petitioner paid off the $14,000 it still owed Lasker's. After payment of this note, petitioner had cash on hand of $7,872.76, but accrued taxes and bills payable totaled $6,343.87. While the $10,000's worth of Government Bonds was available, it had been estimated that the cost of the needed delivery trucks was over $8,000. In the light of these facts, the Board determined that it was not possible to pay dividends. By the time the trucks became available in 1948, petitioner had sufficient money on hand to pay for such equipment without using the Government Bonds. There were no loans outstanding to petitioner's major stockholder. Petitioner's majority *359 and practically sole stockholder had sufficient income during 1946 to place her in the surtax brackets. Respondent determined that petitioner had undistributed section 102 net income for the year 1946 in the amount of $10,720.42. During the year 1946, the earnings and profits of petitioner were not permitted to accumulate beyond the reasonable needs of the business, and petitioner was not availed of for the purpose of preventing the imposition of surtax upon its shareholders through the medium of permitting its earnings and profits to accumulate instead of being divided or distributed. Opinion RICE, Judge: The sole issue is whether petitioner is subject to the surtax under section 102 of the Internal Revenue Code[1] *361 for the year 1946 by reason of having been availed of for the purpose of preventing the imposition of surtax upon its stockholders. Whether section 102 surtax will apply is a question of fact to be determined from all the facts and circumstances of the record. No one criteria is controlling. Helvering v. Chicago Stock Yards Co., 318 U.S. 693 (1943); The Whitney Chain & Manufacturing Co., 3 T.C. 1109 (1944), aff'd 149 Fed. (2d) 936 (C.A. 2, 1945); Cecil B. DeMille et al., 31 B.T.A. 1161 (1935), *360 aff'd 90 Fed. (2d) 12 (C.A. 9, 1937), cert. denied, 302 U.S. 713 (1937). Under section 102 (c), [2] if earnings or profits are accumulated beyond the reasonable needs of the business, the petitioner must by a clear preponderance of evidence prove that such retention was not to avoid surtax upon its shareholders. During the taxable year, petitioner paid a $14,000 debt which it owed Lasker's for acquisition of its assets. The debt originally had been over $22,000, and between the years 1942 through 1945 was reduced to this amount. In addition, petitioner at the suggestion of its general manager and with the approval of its Board of Directors attempted to obtain delivery trucks, since those on hand were old and in bad condition. It was estimated that the cost of such equipment would be about $8,100. Post-war conditions made it difficult to get delivery trucks, and as a result none were obtained until 1948. After setting aside the $14,000 to pay off the note to Lasker's and the $8,100 estimated to be necessary to purchase the vehicles and eliminating from *362 current assets the linen supplies (which were a necessary part of petitioner's business and not held for sale), petitioner would have had current assets of a little over $12,000 and current liabilities of over $6,000. Retention of such amount under the facts of this case cannot be said to be beyond the reasonable needs of petitioner's business. Respondent relies on cases such as KOMA, Inc., et al. v. Commissioner, 189 Fed. (2d) 390 (C.A. 10, 1951) and McCutchin Drilling Co. v. Commissioner, 143 Fed. (2d) 480 (C.A. 5, 1944). In his brief, respondent states, in citing such cases: "Similar arguments regarding the necessity of retaining accumulated surplus for the purpose of buying necessary machinery at some future indefinite date have frequently been advanced by other taxpayers in Section 102 cases, and just as frequently have been considered wholly lacking in merit, when as here, the taxpayer failed to establish the immediate need of such surplus." The above-cited cases are distinguishable from the instant case. Here, the intention of petitioner was not to purchase the trucks at some future indefinite date, but to purchase them as soon as possible. Petitioner's evidence established *363 the immediate need of such trucks. Petitioner's entire business was based upon the delivery of linens to business establishments, and delivery equipment was essential. During the war, trucks were unavailable for civilian purposes; and, therefore, as soon as the war was over, it was necessary to replace the pre-war equipment as soon as possible. In the McCutchin case, the court said: "The statute, we think, contemplates immediate need, need associated with business in hand * * *." Such language is applicable in the instant case, and we feel that here petitioner has established the immediate necessity which was its purpose for retaining the money. Petitioner paid dividends in the amounts of $6,000 for 1947 and 1948 and the amounts of $12,000 for 1949 and 1950. While such evidence of happenings in years after the taxable year in question is not controlling, it is corroborative of the problem existing in section 102 cases; namely, the motive for retention of income. While it might be argued that dividends in 1949 and 1950 are self-serving, since by that time petitioner was aware of the pendency of this case, such argument cannot be made as to the dividends paid in 1947 and 1948. This is *364 not a case where money passed from a corporation to a stockholder by some method other than by declaration of a dividend. No loans were made to Minnie, no stock was retired, nor was any other means employed such as are used at times in this type of case. Because of the foregoing reasons plus all other facts appearing in the record, we hold that petitioner was not availed of in 1946 for the purpose of preventing the imposition of the surtax upon its stockholders by permitting its earnings or profits to accumulate instead of being distributed, and that the respondent erred in the imposition of section 102 surtax on petitioner for the year 1946. Decision will be entered for the petitioner. Footnotes
1. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition of Tax. - There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following: 27 1/2 per centum of the amount of the undistributed section 102 net income not in excess of $100,000, plus 38 1/2 per centum of the undistributed section 102net income in excess of $100,000. * * *↩
2. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. * * *
(c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.↩